UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE GUZMAN,<br><br>                      Plaintiff,<br>v.<br>RACHEL FINCH,<br><br>                      Defendant. | Case No.: 19cv412-MMA (MDD)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16**<br><br>[Doc. No. 2] |

Plaintiff Jose Guzman ("Plaintiff") brings one state-law cause of action against Defendant Rachel Finch ("Defendant") for libel per se. Doc. No. 1-2 ("Compl."). Defendant filed the instant motion to strike the Complaint pursuant to California's anti-Strategic Lawsuit Against Public Participation ("anti-SLAPP") statute, California Code of Civil Procedure Section 425.16. Doc. No. 2-1 ("Mtn."). Plaintiff filed an opposition [Doc. No. 3 ("Oppo.")], to which Defendant replied [Doc. No. 6 ("Reply")]. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. Doc. No. 7. For the reasons set forth below, the Court **DENIES** Defendant's anti-SLAPP motion.

## BACKGROUND

Plaintiff, who resides in Florida, was formerly an Area Manager for Mattress Firm, Inc, who "enjoyed a good reputation, both generally and in his business." Compl. ¶¶ 5-6.

Defendant is a resident of Missouri. Doc. No. 1 at 2. Plaintiff alleges that on or about September 20, 2018, Defendant posted a statement on her Facebook[1] page claiming that Plaintiff raped her. Compl. ¶¶ 7. The entirety of the Facebook post is attached to Defendant's motion, as follows:

> I never share personal things on social media, and this is very personal. I'm scared about the repercussions of posting this. I'm scared of being judged. But it may help someone else in a similar situation, so I'm choosing to be fearless.
>
> I was in an abusive relationship for a year and a half.
>
> Every relationship has its downfalls. Nobody's perfect, and people make mistakes. People argue. People say and do things that hurt their partner sometimes. That is not abuse. Abuse is a strong accusation to make, so let me explain what abuse is:
>
> Abuse is about exercising complete control. Abuse is about making the person believe they have nothing and nobody other than their abuser. Abuse is about making the person feel that they are crazy and useless without their abuser. Abuse means there are no boundaries the abuser cannot cross. Abuse is about power and control.
>
> When I met my partner, I was in a vulnerable place. Following a sexual assault by a colleague and traveling the country alone for work, nobody would talk to me. My partner introduced himself as a hero, who would help me fix my "broken" reputation. He told me I was seen as an "HR nightmare" and that management warned everyone to stay away from me. Nobody even knew me.
>
> He was 48, and I was 20. He was a supervisor above me. He was gentle and kind at first. I was so grateful to have someone who wanted to help me that I didn't see the red flags. I trusted him.
>
> He was very charming, well-liked, respected, and fun. He helped a lot of people. He was a good friend, a great father, and a fantastic leader. He went out of his way to be a gentleman, open doors and pull out chairs. He praised

---

[1] Facebook is a social media networking service with approximately 1.79 billion active users. *See Packingham v. North Carolina*, 137 S. Ct. 1730, 1735 (2017).

my successes. For the first few months, I was thrilled to have him. He told me that he loved me. I was in love with him.

Then, there were lies. Then, there was infidelity. Normal relationship struggles. It hurt, but I decided to stick around and work through them. I took a three day break from speaking to him. When I finally answered his phone call, he was furious. I begged him not to retaliate professionally. He said, "As long as you cooperate with me, I won't retaliate. Take that as you will. You need to understand I'm not your normal guy on this team. You can't throw me to the curb like a fucking scrub." He threatened to "knock out" a friend of mine who was giving me advice. I was scared, so I stayed. That's where it started.

He constantly reminded that he was older than me, that he knew more about life than I did. When I had an idea or tried to reason with him, it was knocked down as immature and stupid. We couldn't do what I wanted to do; it always had to be his way, because he was older, wiser, stronger, better than me. He warned that, without him, nobody liked me and I would be ostracized. Without him, I was worthless. I didn't want to lose the only person by my side. I had to do everything he wanted me to do. I believed I powerless.

I was not allowed to have friends that he didn't know or approve of. I was never once allowed to go out without him, even with female friends. He could go out partying until 3am all he wanted, and if I said it made me uncomfortable I was "insecure and jealous" and blown off. If I mentioned that he was not treating me equal, he got angry and questioned who I was talking to. I had to cut people off when he told me to. He convinced me that all my loved ones lied to me, that I was bad at choosing friends. \*\*At one point, for months, I wasn't allowed to talk to my own mother, because she was giving advice that went "against him". \*\* I believed I was completely alone.

I was pressured to do sexual things that I was uncomfortable with. I expressed that I didn't want to do them, and I was pushed again and again. Sometimes he would give up and give me the silent treatment. Sometimes he would do it anyway while I was saying no. Once, I was crying and yelling "stop". He didn't stop. I had a panic attack, he didn't stop. When it was over, he blamed me for not yelling loudly enough. I felt like it was my fault. In retrospect, that was rape. But I believed my body didn't belong to me.

I was not allowed to wear clothes that he didn't approve of. I had to wear shoes and dresses he told me to wear. If he told me to curl my hair, I had to I

3

pushed back sometimes, but when I did he would get angry and lash out. I didn't want to face being yelled at, cursed at, and belittled. I believed I was incapable of having my own thoughts.

I spent my last pennies to see him on New Years, because he demanded it. When I got sick with a chest cold three days in, he blamed me for exposing him to a sickness. "I'm too important to get sick," he said. He called me disgusting and useless. He told me to pack my things and get out of his house. I had no money and nowhere to go, except to sleep at the airport for two days. This was the only thing he had ever apologized for, but still gave me a list of reasons why I deserved it. I believed I was trash.

Whenever I was sad, I was crazy and attention-seeking. Whenever I was angry, I was being dramatic and ungrateful. Whenever I was scared, I was weak. He said, "It's annoying when you cry." Never once did he ever hug me when I cried. Not once did he ever comfort me when I was upset. I believed I wasn't entitled to have emotions.

I broke my ankle in front of him. He told me to suck it up and quit being a baby. He told me I was stupid for not looking where I was walking. Multiple times, he took me on miles-long walks to see things he wanted to see, and he rolled his eyes when I said I was in pain. "You weren't in pain a couple minutes ago!" He never slowed down for me. He treated me like my pain didn't matter. I believed his desire to have a good time was more important than my pain.

Anything he did wrong was somehow my fault. He cheated on me: my fault because I wasn't committed enough to move in with him after a few months. He wouldn't let me have friends: my fault because I'm too reckless and easily influenced. He never offered support: my fault because I tried getting support from other people. He refused to give me trust: my fault because I wouldn't always follow his demands. I believed everything was my fault.

Those are only a few examples. After a year and a half, I was empty. I believed everything he conditioned me to believe about myself. I was alone and tired. I deserved all of this. I was worthless, useless, nothing. I tried to hurt myself.

Luckily, I was unsuccessful. And I found God through it all.

4

19cv412-MMA (MDD)

> Even though doctors, my family, my friends were all telling me that I was being abused, I still couldn't accept it. Maybe I WAS crazy. Maybe it WAS my fault. I decided to give my partner one final chance, with God on my side. I prayed for a sign, and I got my wish. "You wasted all this time praying today. You're prioritizing your God bullshit above me."
>
> I took my power back. I dumped him.
> The worst part about abusive partners is that you actually, truly love them. I still love him. I still see all the positive aspects of him and the good things he brought into my life. He took me to the Bahamas on my 21st birthday. He's taken me on trips out of the country three times. He encouraged me to be successful and do the right things. He made me feel loved when I was following all his rules and guidelines.
>
> But he loved me the same way a kid loves their toys. He wanted me to believe I only existed to make his life better. And that's not healthy. I wasn't a perfect partner, but nobody deserves to be treated that way.
>
> I deserve better than that. It's embarrassing that it took so long to see it. I'm healing more and more every day that I'm surrounded by my supportive friends and family. He doesn't have power over me anymore.
>
> You should always be able to talk to your partner when you feel like something isn't right. Your partner is supposed to boost you up, without tearing you down first. Your partner should be there for you when you're sad. Your partner should make you feel loved and supported JUST the way you are.
>
> If anyone reading this feels like they are experiencing something similar, PLEASE reach out to me. It doesn't matter if I don't know you or if we haven't spoken in a long time. I understand, and I am here for you. You aren't alone. You aren't crazy. It's not your fault. You are worthy of love.

Doc. No. 2-2 ("Rikos Decl."), Exhibit A ("Facebook Post").[2]

---

[2] The Court incorporates the Facebook post by reference into the Complaint, which refers "extensively" to the Facebook post and "form[s] the basis" of Plaintiff's libel per se claim. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (internal citations omitted); *see also Mandel v. Bd. of Trs. of the Cal. State Univ.*, No. 17-cv-03511-WHO, 2018 U.S. Dist. LEXIS 185871 at *20 n.13 (N.D. Cal. Oct. 29, 2018) (incorporating by reference the "full content of [a] Facebook post").

Plaintiff alleges the statement is "false, unprivileged, and libelous *per se*," which exposes him "to hatred, contempt, ridicule, and obloquy because it plainly accuses him of participating in immoral conduct and criminal activity . . . ." Compl. ¶ 12. Defendant allegedly made the statement "with constitutional actual malice and/or reckless disregard for the truth, with no good faith belief it was true . . . ." Compl. ¶ 13. Plaintiff alleges his reputation was greatly injured as a result and that he "suffered loss of his employment, reputation, shame, mortification, hurt feelings, and severe emotional distress" as a direct and proximate result of Defendant's statement. Compl. ¶¶ 15-16.

## **LEGAL STANDARD**

California's anti-SLAPP statute provides a mechanism for striking "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." *See* Cal. Civ. Proc. Code § 425.16(a). California's anti-SLAPP statute "shall be construed broadly." *Id.* "Motions to strike a state law claim under California's anti-SLAPP statute may be brought in federal court."[3] *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003) (citing *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 970-73 (9th Cir. 1999)).

"Resolution of an anti-SLAPP motion requires the court to engage in a two-step process." *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 733 (2003) (internal quotation marks and citation omitted). "The first prong . . . requires the court to decide 'whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity.'" *FilmOn.com v. DoubleVerify, Inc.*, 13 Cal. App. 5th 707, 715 (Ct. App. 2017) (quoting *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002)). The second prong requires the court to determine "whether the

---

[3] Recently, this has been called into question, though it remains the law. *See Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 272 (9th Cir. 2013) (Kozinski, J., concurring) (stating that *Newsham* "is wrong and should be reconsidered.").

1 plaintiff has demonstrated a probability of prevailing on the claim." *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002) (citing Cal. Civ. Proc. Code § 425.16(b)(1); *Equilon Enters.*, 29 Cal. 4th at 67). If "the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim," the motion to strike must be denied. Cal. Civ. Proc. Code § 425.16(b)(1).

## DISCUSSION

Defendant contends that Plaintiff's only cause of action arises from protected activity and that Plaintiff cannot establish a probability of prevailing on his claim. Mtn.

### A. Protected Activity

The Court must first determine whether Defendant can satisfy her burden of demonstrating that the challenged cause of action arose from a protected activity. Here, the challenged activity is Defendant's posting of a statement on Facebook. Compl. ¶ 7. Section 425.16(e) of the anti-SLAPP statute defines an "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" to include, as relevant here, "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or . . . any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Civ. Proc. Code § 425.16(e). Defendant argues her Facebook post falls within this definition. *See* Mtn. at 4.

Plaintiff does not dispute that Defendant's Facebook post was made on an open forum. *See* Oppo. It is well settled under California law that web sites accessible to the public are "public forums" for purposes of the anti-SLAPP statute. *Barrett v. Rosenthal*, 40 Cal. 4th 33, 41 n.4 (2006); *Wong v. Jing*, 189 Cal. App. 4th 1354, 1366 (Ct. App. 2010). Additionally, "'Facebook's website and the Facebook pages at issue are 'public forums,' as they are accessible to anyone who consents to Facebook's Terms.'" *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 199 (Ct. App. 2017). Accordingly, Defendant's post on Facebook is a written statement made in a public forum under section

425.16(e)(3). *See id.*; *see also Daniel v. Wayans*, 8 Cal. App. 5th 367, 387 (Ct. App. 2017) (finding a Twitter posting to be a "statement made in a public forum" because a Twitter account is a "publicly accessible social media forum").

Section 425.16(e)(3) and (4) also require that the conduct be in connection with an issue of public interest, although the statute does not define "public interest" or "public issue." *See* Cal. Civ. Proc. Code § 425.16(e)(3)-(4). "Those terms are inherently amorphous and thus do not lend themselves to a precise, all-encompassing definition." *Cross v. Cooper*, 197 Cal. App. 4th 357, 371 (Ct. App. 2011). Nonetheless, there are general guiding principles courts follow to determine whether a statement concerns a matter of public interest. First, section 425.16 is to "'be construed broadly' to safeguard 'the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.'" *Nygård, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1039 (Ct. App. 2008) (quoting Cal. Civ. Proc. Code § 425.16(a)). The legislative history and case law "suggest that 'an issue of public interest' . . . is *any issue in which the public is interested*. In other words, the issue need not be 'significant' to be protected by the anti-SLAPP statute—it is enough that it is one in which the public takes an interest." *Id.* at 1042.

Second, section 425.16 "governs even private communications, so long as they concern a public issue." *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 897 (Ct. App. 2004) (citing *Averill v. Superior Ct.*, 42 Cal. App. 4th 1170, 1175 (Ct. App. 1996)). Third, there are "three non-exclusive and sometimes overlapping categories of statements that have been found to encompass an issue of public interest under the anti-SLAPP statute[:]" (1) "cases where the statement or activity precipitating the underlying cause of action was 'a person or entity in the public eye[;]'" (2) "the statement or activity involved 'conduct that could directly affect a large number of people beyond the direct participants[;]'" and (3) "cases where the statement or activity involved 'a topic of widespread, public interest.'" *FilmOn.Com*, 13 Cal. App. 5th at 717 (citations omitted).

Finally, there are five additional attributes of an issue that would make it one of public, rather than private, interest: (1) "'public interest' does not equate with mere curiosity[;]" (2) "a matter of public interest should be something of concern to a substantial number of people[;]" (3) "there should be some degree of closeness between the challenged statements and the asserted public interest[;]" (4) "the focus of the speaker's conduct should be the public interest rather than a mere effort 'to gather ammunition for another round of [private] controversy[;]'" and (5) a "person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people." *Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1132-33 (Ct. App. 2003).

With these principles in mind, the Court next determines whether Defendant's Facebook post concerns a public issue or an issue of public interest under the anti-SLAPP statute. Defendant contends the statement is of public interest because it "is clearly about sexually abusive relationships, sexual violence, [and] sexual harassment in the workplace[.]"[4] Reply at 3. Plaintiff counters that "[t]he statement describes a consensual, and not unwanted, relationship[.]" Oppo. at 9. According to Plaintiff, the statement is not of public interest, but rather is a private controversy between private individuals not in the public eye. *Id.* at 9-17.

The post starts with Defendant explaining that she is sharing something "very personal" because "it may help someone else in a similar situation." Facebook Post. She goes on to define what "abuse" means to her in the context of an "abusive relationship" she was in for about a year and a half with her supervisor. *Id.* Among other examples of

---

[4] Defendant requests the Court judicially notice Google search results for the phrases "sexually abusive relationships," "sexual harassment in the workplace," "sexual violence," "rape," and "#metoo." Doc. No. 2-2. Judicial notice of these documents is unnecessary for the instant purposes, as the Court finds the disposition of the instant motion is proper without reference to them. *See Ruiz v. City of Santa Maria*, 160 F.3d 543, 548 n.13 (9th Cir. 1998) (denying to judicially notice facts which were not relevant to the disposition of the issues before the court). Accordingly, the Court **DENIES** Defendant's request to judicially notice the Google search results.

9

abuse, she explains that her partner pressured her "to do sexual things that [she] was uncomfortable with," that she was "pushed again and again" to do them, and that sometimes "he would do it anyway while [she] was saying no." *Id.* In hindsight, Defendant explains "that was rape." *Id.* She also explains her partner was verbally abusive. For example, he apparently told Defendant she was "disgusting and useless" or that it is "annoying when [she] cr[ies]." *Id.* Defendant concludes the post by saying "[i]f anyone reading this feels like they are experiencing something similar PLEASE reach out to me. It doesn't matter if I don't know you or if we haven't spoken in a long time. I understand, and I am here for you. You aren't alone. You aren't crazy. It's not your fault. You are worthy of love." *Id.* In summation, the post explains Defendant was subjected to physical and verbal abuse. The Court finds that the content of Defendant's Facebook post is most akin to domestic violence. Courts have found domestic violence to be of widespread public interest. *See Sipple v. Found. for Nat'l Progress*, 71 Cal. App. 4th 226, 238 (Ct. App. 1999).

Plaintiff argues that even though the topic may be a matter of public interest generally, the content of the statement is merely between private persons regarding a private matter. Oppo. at 14. Plaintiff seems to assert that Defendant's statement must contribute to a public debate and concern a large number of people. *Id.* at 14-17. "[W]here a statement concerns an issue of widespread public interest, it need not also contribute in some manner to a public debate." *FilmOn.com*, 13 Cal. App. 5th at 722 (citing *Cross*, 197 Cal. App. 4th at 381-82 n.15; *Tamkin v. CBS Broadcasting, Inc.*, 193 Cal. App. 4th 133, 143 (Ct. App. 2011)). As previously stated, section 425.16 "governs even private communications, so long as they concern a public issue." *Wilbanks*, 121 Cal. App. 4th at 897. Even further, the focus of Defendant's conduct appears to be the public interest in domestic violence and/or abusive relationships rather than an effort "'to gather ammunition for another round of [private] controversy.'" *Weinberg*, 110 Cal. App. 4th at 1132-33. Based on the foregoing, the content of Defendant's Facebook post is an issue or matter of public interest. Accordingly, the Court concludes that Plaintiff

sued Defendant for engaging in conduct in furtherance of her right of free speech in connection with an issue of public interest.

## B. <u>Probability of Prevailing</u>

Once the defendant has met the burden of showing the relevant conduct arises from a protected activity, "the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." *Baral v. Schnitt*, 1 Cal. 5th 376, 396 (2016). To establish a probability of prevailing on a claim, a plaintiff must "make a prima facie showing of facts which would, if credited, support a judgment in his favor." *Conroy v. Spitzer*, 70 Cal. App. 4th 1446, 1451 (Ct. App. 1999). The determination is made on the basis of the "pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." Cal. Civ. Proc. Code § 425.16(b)(2). A "plaintiff need not produce evidence that he or she can recover on every possible point urged" but, pleadings alone are inadequate. *Wilbanks*, 121 Cal. App. 4th at 905. Thus, the plaintiff must submit admissible evidence to show a probability of prevailing at trial. *See Evans v. Unkow*, 38 Cal. App. 4th 1490, 1497-98 (Ct. App. 1995). However, the burden of establishing a probability of prevailing is not high. The court does not weigh credibility or evaluate the weight of the evidence; rather, the court accepts as true all evidence favorable to plaintiff and assesses the defendant's evidence only to determine whether it defeats the plaintiff's submission as a matter of law. *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 699-700 (Ct. App. 2007). "Only a cause of action that lacks 'even minimal merit' constitutes a SLAPP." *Id.* (quoting *Navellier*, 29 Cal. 4th at 89).

Plaintiff asserts one cause of action for libel per se against Defendant. Compl. ¶¶ 9-23. "Libel is a form of defamation effected in writing." *Doe 2 v. Superior Ct.*, 1 Cal. App. 5th, 1300, 1312 (Ct. App. 2016). As such, "for Plaintiff to demonstrate a probability of prevailing on his libel per se claim, he need only make a prima facie showing that Defendant[] published a false, defamatory statement of fact concerning Plaintiff." *Reger v. Smith*, No. 02:05-cv-2156-GEB-GGH, 2006 WL 2458714, at *4

(E.D. Cal. Aug. 22, 2006) (citing *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (Ct. App. 1999)). Defendant contends Plaintiff cannot meet his burden because her Facebook post does not reference Plaintiff by name and the statement is an opinion, and therefore not provably false. Mtn. at 10.

### 1. *Publication*

The publication element of a defamation claim requires a communication of the allegedly defamatory statement "to a third person who understands its defamatory meaning as applied to the plaintiff." *Shively v. Bozanich*, 31 Cal. 4th 1230, 1242 (2003). The parties do not dispute that the statement was communicated to third persons, as the statement was posted on Defendant's Facebook page. Accordingly, the Plaintiff has established the publication element.

### 2. *False, Defamatory Statement of Fact*

Defendant contends the statement is an opinion because she was referring to her "beliefs and impressions," which are "not provable facts." Mtn. at 9. Plaintiff argues the statement describes factual events that are provably false. Oppo. at 19-22. "[A] defamatory statement must contain a provable falsehood[.]" *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1261 (Ct. App. 2017). "[C]ourts distinguish between statements of fact and statements of opinion for purposes of defamation liability." *Id.* Generally, mere opinions are not actionable, but statements of opinion that imply false assertions of fact are. *Hawran v. Hixson*, 209 Cal. App. 4th 256, 289 (Ct. App. 2012). "[T]he question is not strictly whether the published statement is fact or opinion," but "[r]ather, the dispositive question is whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact." *Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 385 (Ct. App. 2004); *see also Jackson*, 10 Cal. App. 5th at 1261; *Hawran*, 209 Cal. App. 4th at 289. Accordingly, Defendant's statement is actionable if it "could reasonably be understood as declaring or implying actual facts capable of being proved true or false." *Integrated Healthcare Holdings, Inc. v.*

*Fitzgibbons*, 140 Cal. App. 4th 515, 527 (Ct. App. 2006) (internal quotation marks and citation omitted)

Here, Defendant's remarks about her and Plaintiff's relationship were based on disclosed facts about her firsthand experiences. *See* Facebook Post. "A statement of opinion based on fully disclosed facts can be punished only if the stated facts are themselves false and demeaning. The rationale for this rule is that when the facts underlying a statement of opinion are disclosed, readers will understand they are getting the author's interpretation of the facts presented; they are therefore unlikely to construe the statement as insinuating the existence of additional, undisclosed facts. When the facts supporting an opinion are disclosed, readers are free to accept or reject the author's opinion based on their own independent evaluation of the facts." *Integrated Healthcare Holdings, Inc.*, 140 Cal. App. 4th at 528 (internal citation, quotation marks, and alterations omitted). Under the totality of the circumstances, Defendant's opinion regarding her relationship with Plaintiff is based on facts disclosed in her Facebook post.

Consequently, to meet his burden for the second step of the anti-SLAPP motion analysis, Plaintiff must provide evidence tending to show the factual underpinnings of Defendant's statement are false. To make such a showing, a plaintiff is required "adduce competent, admissible evidence that the claims [are] legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment[.]" *Dwight R. v. Christy B.*, 212 Cal. App. 4th 697, 713-14 (Ct. App. 2013) (internal quotation marks and citations omitted). "'Admissible evidence' for purposes of an anti-SLAPP statute is evidence, which by its nature, is capable of being admitted at trial, i.e., evidence which is competent, relevant and not barred by a substantive rule." *Fashion 21 v. Coal. for Humane Immigrant Rights of Los Angeles*, 117 Cal. App. 4th 1138, 1147 (Ct. App. 2004).

Plaintiff declares he "was never sexually abusive or sexually violent toward [Defendant,] did not rape [her] at any time[, and] never pressured her to do sexual things she was uncomfortable with." Doc. No. 3-1 ("Guzman Decl.") ¶ 8. He further declares

that he "never forced [Defendant] to engage in sexual acts against her will[,] did not push her to do sexual things she had expressed she did not want to do or give her the silent treatment based on refusals of sexual acts[, and she] never cried during sex with [him] or yelled 'stop' and [he] never blamed her for not yelling 'stop' loud enough." *Id.* ¶¶ 9-10.

Defendant objects to these statements on the grounds that they "lack[] foundation as to what [Defendant's] opinions and impressions were."[5] Doc. No. 6-6 at 3-4. The Court notes that Defendant's objections do not contain any argument explaining why those portions of Plaintiff's declarations "lack foundation as to what [Defendant's] opinions and impressions were." *See id.* Notwithstanding Defendant's failure to argue or explain her objections, the Court has carefully considered them and finds that Plaintiff establishes his personal knowledge of the matters in his declaration.

"[D]eclarations that lack foundation or personal knowledge . . . are to be disregarded." *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 26 (Ct. App. 2007); *see Sweetwater Union High School Dist. v. Gilbane Building Co.*, 6 Cal. 5th 931, 947 (2019) ("Evidence may be considered at the anti-SLAPP motion stage if it is reasonably possible the evidence set out in supporting . . . declarations . . . will be admissible at trial."). Under Federal Rule of Evidence 602, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness had personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Here, Plaintiff's statements outlined above are entirely based on his personal knowledge of his relationship with Defendant and do not pertain to Defendant's "opinions and impressions." *See* Doc. No. 6-6 at 3-4. Accordingly, the Court **OVERRULES** Defendant's objections to these portions of Plaintiff's declaration.

---

[5] Defendant objects to several other portions of Plaintiff's declaration as well. *See* Doc. No. 6-6. However, the Court did not rely on those portions of Plaintiff's declaration in deciding this motion, and therefore **OVERRULES** as moot those objections. Plaintiff submitted three additional declarations as evidence in opposition to Defendant's motion. *See* Doc. Nos 3-2, 3-3, 3-4. Defendant objects to each declaration on various grounds. *See* Doc. Nos. 6-3, 6-4, 6-5. The Court also **OVERRULES** as moot those objections because the Court did not rely on them in deciding this motion.

With respect to the falsity of Defendant's statement, Plaintiff's declaration expressly contradicts facts relating to the alleged sexual violence in the parties' relationship. *See* Guzman Decl. While the declaration is self-serving, the Court does not weigh the evidence or assess the credibility of Plaintiff's declaration and merely determines whether there is sufficient evidence for a jury to decide in Plaintiff's favor. *Taus v. Loftus*, 40 Cal. 4th 683, 714 (2007). The required probability that Plaintiff will prevail is not high, "[t]he California Supreme Court has sometimes suggested that suits subject to being stricken at step two are those that 'lack[] even minimal merit.'" *Hilton v. Hallmark Cards*, 599 F.3d 894, 908 (9th Cir. 2010) (citation omitted). Plaintiff's claim at least has minimal merit based on his declaration. Accordingly, accepting Plaintiff's relevant evidence as true and without weighing competing evidence, as the Court must in an anti-SLAPP motion, Plaintiff has met his low burden to make a prima facie showing of facts to support his defamation claim.

### 3. *Concerning Plaintiff*

"In defamation actions the First Amendment . . . requires that the statement on which the claim is based must specifically refer to, or be 'of and concerning,' the plaintiff in some way." *Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1042 (1986). "To be referred to specifically, . . . the plaintiff need not be mentioned by name, but may be identified by clear implication." *Id.* at 1044 n.1. "It is sufficient if from the evidence the jury can infer that the defamatory statement applies to the plaintiff . . . [or] if the publication points to the plaintiff by description or circumstance tending to identify him.'" *Church of Scientology of Cal. v. Flynn*, 744 F.2d 694, 697 (9th Cir. 1984) (quoting *Di Giorgio Fruit Corp. v. Am. Fed'n of Labor & Cong. of Indus. Orgs.*, 215 Cal. App. 2d 560, 569-70 (Ct. App. 1963)). "Whether defamatory statements can reasonably be interpreted as referring to plaintiffs is a question of law for the court." *Tamkin*, 193 Cal. App. 4th at 146.

Defendant contends the statement "does not even reference the Plaintiff," such that "[a] reader of the post would have no knowledge of who the post was regarding." Mtn. at

8. Plaintiff counters that the statement sufficiently identifies him "by both description *and* circumstances." Oppo. at 18.

Here, the Facebook post identifies Plaintiff by clear implication. *See Blatty*, 42 Cal. 3d at 1044 n.1. Defendant's post describes her "partner" as a 48-year-old male she dated for a year and a half, who is a father, and who was one of her supervisors at work. Defendant also provides factual details about their relationship that sufficiently identify Plaintiff by implication. For example, Defendant explains the two traveled to the Bahamas for Defendant's 21st birthday, that they traveled out of the country three times, and that Defendant spent New Year's with him. Moreover, some of the comments in response to Defendant's Facebook post indicate that third persons understood the statement referred to Plaintiff. One person responded "that's why I couldn't and wouldn't help you get him new glasses," and another person commented "I know you were taken advantage of by a . . . sales guy[.]"[6] Rikos Decl., Exhibit B. Thus, a reasonable reader could have understood the Facebook post as referring to Plaintiff.

### 3. *Special Damages*

"A statement that is defamatory without the need for explanatory matter such as an inducement, innuendo or other extrinsic fact, constitutes 'a libel on its face,'" or libel per se. *Overstock.com, Inc.*, 151 Cal. App. 4th at 700 (quoting Cal. Civ. Code § 45a). If a plaintiff sufficiently alleges and proves a libel per se claim, it is unnecessary to prove special damages because damage to the plaintiff's reputation is presumed. *See Barnes-Hind, Inc. v. Superior Ct.*, 181 Cal. App. 3d 377, 382 (Ct. App. 1986). California Civil Code 45 explains that three categories of statements are libelous on their face: (1) statements that expose a person to hatred, contempt, ridicule, or obloquy; (2) statements that cause a person to be shunned or avoided; or (3) statements that tend to injure one in

---

[6] Plaintiff argues the Court should not consider the comments and replies to Defendant's Facebook post because it does not include all the replies and comments made on the post. Oppo. at 23. However, Plaintiff relies on these comments in his opposition. *See id.* at 19. Accordingly, the Court finds consideration of the comments and replies before it is appropriate.

his or her occupation. Cal. Civ. Code § 45. Under California law, statements that falsely impute the commission of a crime are libelous on their face. *Yow v. Nat'l Enquirer, Inc.*, 550 F. Supp. 2d 1179, 1183 (E.D. Cal. 2008). Here, Defendant's Facebook post states that Plaintiff was verbally and physically abusive towards her. *See* Facebook Post. This statement, if false, is libelous on its face. As such, Plaintiff need not prove special damages.

C. **Attorney's Fees**

Plaintiff argues he is entitled to an award of attorney's fees. Oppo. at 23-24. A prevailing plaintiff is entitled to "costs and reasonable attorney's fees" in accordance with California Code of Civil Procedure § 128.5 if "the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay." Cal. Civ. Proc. Code § 425.16(c). Section 128.5 defines "frivolous" as "totally and completely without merit or for the sole purpose of harassing an opposing party." Cal. Civ. Proc. Code § 128.5(b)(2). Plaintiff contends the motion is frivolous and without merit because Defendant did not cite the correct standard for the second prong of the anti-SLAPP analysis, ignored statements in her own evidentiary submission that evinced Plaintiff's Facebook friends knew the post was about Plaintiff, and her argument that the post is entirely opinion "could not have been made in good faith." Mtn. at 24. First, Defendant cited the correct legal standard for the second prong of the anti-SLAPP analysis. *See* Oppo. at 7 (noting that "the plaintiff must demonstrate the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence is credited"). Second, Defendant's arguments were not "totally and completely without merit." Cal. Civ. Proc. Code § 128.5(b)(2); *see Baker v. Los Angeles Herald Exam'r*, 42 Cal. 3d 254, 261-62 (1986) ("When one states a view in terms of an 'impression,' the listener or reader is on notice that the maker is not vouching for its accuracy. A reasonable person would understand that a statement of opinion rather than of fact was to follow."); Mtn. at 9 (arguing the Facebook post is an impression rather than a declaration or implication of provably false assertions of fact);

17

Reply at 8 (distinguishing case law regarding statements referencing plaintiffs without stating their names). Accordingly, the Court **DENIES** Plaintiff's request for attorney's fees.

## CONCLUSION

Based on the foregoing, the Court **DENIES** Defendant's motion. Doc. No. 2. Plaintiff's request for attorney's fees is also **DENIED**. *See* Doc. No. 3 at 23-24.

**IT IS SO ORDERED**.

Dated: April 26, 2019

Hon. Michael M. Anello
United States District Judge