UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| JOSE GUZMAN, | Case No.: 19cv412-MMA (MDD) |
|---|---|
| Plaintiff, | |
| v. | **ORDER RE: COUNTER DEFENDANT'S MOTION TO DISMISS COUNTER CLAIMS AND COUNTER CLAIMANT AND CROSS CLAIMANT'S VOLUNTARY DISMISSAL** |
| RACHEL FINCH, | |
| Defendant. | |
| | |
| RACHEL FINCH, | [Doc. Nos. 16, 19] |
| Counter Claimant, | |
| v. | |
| JOSE GUZMAN, | |
| Counter Defendant. | |
| | |
| RACHEL FINCH, | |
| Cross Claimant, | |
| v. | |
| MATTRESS FIRM, INC., | |
| Cross Defendant. | |

1

Counter Defendant Jose Guzman ("Guzman") filed the instant motion to dismiss five counterclaims raised by Counter Claimant Rachel Finch ("Finch") pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. No. 16 ("MTD"). Finch filed a response in opposition. Doc. No. 17 ("Oppo."). Guzman did not file a reply. *See* Docket. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. Doc. No. 18. Subsequently, Finch filed a notice of voluntary dismissal with prejudice of all her claims against Cross Defendant Mattress Firm, Inc. ("Mattress Firm") and her claims for wrongful termination and sexual harassment against Guzman.[1] Doc. No. 19 at 1. For the reasons set forth below, the Court **DISMISSES WITH PREJUDICE** all claims brought by Finch against Mattress Firm and Finch's claims for wrongful termination and sexual harassment against Guzman. Additionally, the Court **GRANTS IN PART AND DENIES IN PART** Guzman's motion to dismiss.

## RELEVANT BACKGROUND[2]

Finch was a traveling sales employee at Mattress Firm from May 2016 to October 2018. Doc. No. 9 ¶¶ 1-4. Guzman, over 20 years her senior, was Finch's direct manager and "a powerful sales manager" with "the ability to seriously advance Ms. Finch's fledgling career." *Id.* ¶¶ 5-6. After two work trips together, Guzman and Finch began a "sexual relationship." *Id.* ¶¶ 24-26. "For the first few months, Ms. Finch and Mr. Guzman had a generally pleasant and peaceful relationship." *Id.* ¶ 28. However, when Finch had the day off work, Guzman "would insist that she travel to wherever he was located" and when she resisted he "would accuse her of not taking the relationship or job seriously" and "accuse her of being ungrateful." *Id.*

---

[1] Finch captioned the motion as a "partial motion to dismiss and motion for leave to amend cross complaint." *See* Doc. No. 19. The Court construes the motion as a notice of voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).

[2] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the cross complaint. *See Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976).

In October 2017, Finch learned Guzman was seeing other women and "attempted to end their relationship." *Id.* ¶ 29. Guzman "became enraged," "yelled at her and accused her of being disloyal" and "attempted to guilt her into returning to him." *Id.* ¶ 30. Guzman also "leveraged his position as her manager to threaten her career." *Id.* On October 16, 2017, Finch recorded a telephone conversation with Guzman where Guzman threatened not to retaliate "[i]f you cooperate with me." *Id.* ¶ 31. According to Finch, she had to "choose between her job or resuming her relationship with Mr. Guzman." *Id.* ¶ 32. At the same time, Guzman continued persuading Finch to resume their relationship. *Id.* ¶ 35.

The two ultimately resumed their relationship, which became increasingly abusive. *See id.* ¶ 36. Guzman "exerted ever-tighter control over Ms. Finch," "flew into a rage whenever she turned her attention away from him," "grew angry and jealous if she visited family or friends," "blocked Ms. Finch's mother's phone number from her phone[] so she could not speak with her," "prohibited her from speaking to her best friend," and "began dictating how she dressed and wore her hair." *Id.* When Finch told Guzman "she was fed up" he would "question[] her perceptions of objective events" and claimed she was "assuming the role of victim." *Id.* ¶ 37. Guzman also "invoked his status as her manager to make clear her career was on the line" and "invoke[d] his close relationships with district managers" to warn her she needed to "'respect' him if she wanted to work." *Id.* ¶ 38. Guzman followed through and removed Finch from schedules at the end of 2017 and from April to June of 2018. *Id.*

While working San Diego's annual Del Mar Fair in June 2018, Finch "refused to engage in certain sexual acts with Mr. Guzman. So he raped her. Afterward, as she lay crying in bed, he told her it was her fault because she 'didn't yell loud enough.' At that point, Ms. Finch stopped fighting. She would weakly say 'no,' but gave up easily when he pushed back." *Id.* ¶ 39. Also while working the Fair, Finch and Guzman had a fight and she attempted to leave his house. *Id.* ¶ 40. Guzman "grabbed her by the arms and yanked her so hard that she fell over and broke her fibula." *Id.*

In early September 2018, Finch requested and received reassignment to a Mattress Firm store "to escape the grasp of Mr. Guzman." *Id.* ¶ 42. Guzman "flew into a rage" and suggested "he still controlled her professional fate." *Id.* ¶ 43. "He begged her to come to Los Angeles where he was working, pleading with her to give him another chance." *Id.* When Finch arrived in Los Angeles Guzman was hysterical. *Id.* "He screamed at her for leaving him" so loud that "[c]oworkers remarked . . . they could hear Mr. Guzman yelling at her through the hotel walls." *Id.*

On September 10, 2018 and as a result of their relationship, Finch went to a gun range and attempted suicide. *Id.* ¶ 44. She was subsequently sent to the hospital on a 5150 hold. *Id.* After her attempted suicide, Guzman "was relentless in his attempts to control Ms. Finch. He convinced her to travel to Mexico with him, promising to help her through this difficult period." *Id.* ¶ 45. By the second day in Mexico, Guzman threatened to leave Finch there. *Id.* When they returned to San Diego "she finally broke up with him for good" and "warned him she would call the police if he ever contacted her again." *Id.* Finch alleges that she "suffered for months as the victim of her boss's psychological torture." *Id.* ¶ 49.

On September 20, 2018, Finch posted to her Facebook page about her experience to "help others avoid similar abusive relationships." *Id.* ¶ 46. A coworker who saw the post reported it to Human Resources. *Id.* ¶¶ 46-48. Finch was terminated two weeks later. *See id.* On January 22, 2019, Guzman filed a complaint against Finch in the San Diego County Superior Court alleging that Finch's Facebook post is libel per se. Doc. No. 1-2. Finch removed the action to this Court on March 1, 2019. Doc. No. 1. On June 6, 2019, she answered the complaint and filed a counter complaint against Guzman and Mattress Firm, asserting five causes of action against Guzman and Mattress Firm: (1) assault; (2) battery; (3) sexual harassment; (4) intentional infliction of emotional distress; and (5) wrongful termination in violation of public policy. *See* Doc. No. 9. She also asserts a cause of action for sexual battery against Guzman and two causes of action

against Mattress Firm—negligent hiring, supervision, and retention of employee and failure to prevent harassment and retaliation.[3] *Id.*

## NOTICE OF VOLUNTARY DISMISSAL

Finch "requests the Court dismiss all of [her] claims against Mattress Firm with prejudice" and "her claims against [Guzman] for wrongful termination and sexual harassment with prejudice." Doc. No. 19 at 1. Federal Rule of Civil Procedure 41(a)(1)(A)(i) provides that a cross claimant and counter claimant "may dismiss an action without a court order" by filing "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment[.]" Fed. R. Civ. P. 41(a)(1)(A)(i). Mattress Firm, Inc. has not yet appeared in this action and Guzman has neither answered nor moved for summary judgment. *See* Docket. Accordingly, all claims against Mattress Firm, Inc. are **DISMISSED WITH PREJUDICE**. Additionally, Finch's counter claims for wrongful termination and sexual harassment against Guzman are **DISMISSED WITH PREJUDICE**.

## MOTION TO DISMISS

Guzman now moves to dismiss Finch's counter claims for assault, battery, sexual harassment, intentional infliction of emotional distress, and wrongful discharge. MTD. Finch opposes dismissal of her claims for assault, battery, and intentional infliction of emotional distress. *See* Oppo.; *see also* Doc. No. 19.

A.  **Legal Standard**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . ." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ.

---

[3] Allegations relating to Mattress Firm and Finch's causes of action for wrongful termination and sexual harassment have been omitted from this background section. *See* Doc. No. 19.

P. 12(b)(6). The plausibility standard thus demands more than a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

**B. Discussion**

In light of Finch's notice of voluntary dismissal, the Court **DENIES AS MOOT** Guzman's motion to dismiss the wrongful termination and sexual harassment counterclaims and analyzes the parties arguments regarding assault, battery, and intentional infliction of emotional distress. *See* Doc. No. 19.

**1. Assault**

Guzman maintains that "Finch's counterclaim for assault alleges no facts describing any instance of conduct constituting assault" beyond a formulaic recitation of the elements of assault.[4] MTD at 8. Finch avers that her allegations of rape and Guzman

---

[4] Guzman contends Finch's Facebook post also does not contain allegations of assault and requests the Court judicially notice the post. MTD at 8. The Court has already incorporated the post by reference

6

grabbing her arm and yanking her so hard she fell over and broke her fibula are sufficient to establish assault at this stage of the proceedings. Oppo. at 7. The elements of an assault claim under California law are: (1) the defendant threatened to touch the plaintiff in a harmful or offensive manner; (2) it reasonably appeared to the plaintiff that the defendant was about to carry out the threat; (3) the plaintiff did not consent to the conduct; (4) the plaintiff was harmed; and (5) the defendant's conduct was a substantial factor in causing the harm. *Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2007).

Here, Finch's allegations of rape and yanking her by the arm to the ground sufficiently establish that Guzman threatened to touch Finch in a harmful or offensive manner. *See* Doc. No. 9 ¶¶ 39-40. Similarly, Finch sufficiently alleges that she did not consent to this conduct, that she was harmed, and that Guzman's conduct was a substantial factor in causing the harm. *See id.* ¶¶ 39-40, 54-56. However, it is unclear whether Finch anticipated that Guzman was about to rape or yank her by the arm. *See id.* ¶¶ 39-40. Finch argues that "[t]here are no allegations that Guzman snuck up on Finch or performed these grievous crimes while she was unaware or by accident." Oppo. at 8. However, Finch does not allege facts showing that it reasonably appeared to her that Guzman was about to rape her or yank her arm. *See* Doc. No. 9 ¶¶ 39-40. Accordingly, the Court **GRANTS** Guzman's motion and **DISMISSES** Finch's claim for assault without prejudice and with leave to amend. *See Knappenberger*, 566 F.3d at 942.

### 2. Battery

Next, Guzman argues the battery claim related to Finch breaking her fibula is not facially plausible because her Facebook post states that she broke her ankle in front of him and that Guzman told her she was stupid for not looking where she was walking. MTD at 9-10. Finch counters that the statement does not contradict her battery allegations. Oppo. at 8. Under California law, a battery occurs when: "(1) the defendant

---

into Guzman's complaint but finds Finch's post irrelevant to her allegations of assault for purposes of ruling on a 12(b)(6) motion. *See* Doc. No. 8 at 5 n.2.

intentionally did an act that resulted in harmful or offensive contact with the plaintiff's person, (2) the plaintiff did not consent to the contact, and (3) the contact caused injury, damage, loss or harm to the plaintiff." *Tekle*, 511 F.3d at 855.

Finch alleges that Guzman "grabbed her by the arms and yanked her so hard that she fell over and broke her fibula." Doc. No. 9 ¶ 40. Finch's post on Facebook that she broke her ankle in front of Guzman and his response to her breaking her ankle do not contradict this allegation. Moreover, Finch sufficiently alleges that Guzman intentionally "grabbed" and "yanked" her arms, which resulted in a harmful or offensive contact that caused injury – a broken fibula. Thus, the Court **DENIES** Guzman's motion to dismiss Finch's claim for battery.

### 3. Intentional Infliction of Emotional Distress

Finally, Guzman moves to dismiss Finch's counterclaim for intentional infliction of emotional distress. MTD at 13-15. He contends that Finch's allegations amount to "hostile unpleasantries" common in romantic relationships gone awry—not extreme and outrageous conduct—and that she fails to allege severe emotional distress. *Id.* at 13-14. To state a claim for intentional infliction of emotional distress under California law, a plaintiff must allege: (1) extreme and outrageous conduct by defendant; (2) with intent to cause, or reckless disregard for the possibility of causing, emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of emotional distress. *Avina v. United States*, 681 F.3d 1127, 1131 (9th Cir. 2012). "Extreme and outrageous conduct is conduct that is 'so extreme as to exceed all bounds of that usually tolerated in a civilized community.'" *Chang v. Lederman*, 172 Cal. App. 4th 67, 86 (Ct. App. 2009) (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993)).

In arguing that his conduct was not extreme and outrageous, Guzman avers that this case is analogous to *Cochran v. Cochran*, 65 Cal. App. 4th 488 (Ct. App. 1998). *See* MTD at 13. In that case, the parties were feuding following a "long-standing intimate relationship." *See Cochran*, 65 Cal. App. 4th at 498. The feuding often included "an

exchange of hostile unpleasantries which are intended to sting whoever sits at the delivery end." *Id.* At the heart of the intentional infliction of emotional distress claim was a death threat, preceded by a pattern of previous threats. *Id.* at 498-99. The court found that the threats were not actionable because they were "the kind of boastful, peevish, spleen-venting" threats "which frequently occurs between the parties to an intimate relationship gone bad." *Id.* at 499. Additionally, there were no allegations that the person ever tried to follow through on any of the threats. *Id.*

Here, Finch alleges that Guzman threatened her career, blocked her mother's phone number from her phone, prohibited her from speaking to her best friend, employed psychological tactics to control her, raped her, and grabbed her arms and yanked her with so much force that she fell and broke her fibula. Doc. No. 9 ¶¶ 30-32, 36-40. In contrast to *Cochran*, Finch alleges that Guzman did act on his threats by removing her from schedules at work. *Id.* ¶ 38. Thus, Guzman was not merely making threats, he was allegedly following through on them. Additionally, he exhibited extreme and outrageous conduct by raping Finch and yanking her to the ground. *See Chang*, 172 Cal. App. 4th at 86.

Guzman also asserts that Finch merely alleges that she "'sustained and continued to suffer humiliation, loss of reputation, mental and physical pain and anguish,'" without alleging the "nature and extent of her emotional distress." MTD at 14. California courts have set a high bar for emotional distress claims, requiring "'emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.'" *Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009) (quoting *Potter*, 6 Cal. 4th at 1004). Contrary to Guzman's argument, Finch alleges that his actions "took an extreme psychological toll" on her and that she "fell into a deep depression." Doc. No. 9 ¶ 41. She also alleges that she attempted suicide on September 10, 2018 and was sent to the hospital on a 5150 hold as a result of her relationship with Guzman. *Id.* ¶ 44. These allegations sufficiently establish severe emotional distress. *Little v. Stuyvesant Life Ins. Co.*, 67 Cal. App. 3d 451, 462-63 (Ct. App. 1977) (finding

severe emotional distress where the plaintiff "became deeply depressed" and "took an overdose of Valium"). Accordingly, the Court **DENIES** Guzman's motion to dismiss Finch's intentional infliction of emotional distress claim.

## Conclusion

Based on the foregoing, the Court **DISMISSES WITH PREJUDICE** all causes of action against Defendant Mattress Firm, Inc., and the claims for sexual harassment and wrongful termination against Defendant Guzman. Accordingly, the Clerk of Court is instructed to terminate this action as to Defendant Mattress Firm, Inc. The Court also **GRANTS IN PART AND DENIES IN PART** Guzman's motion to dismiss. Specifically, the Court **DENIES AS MOOT** Guzman's motion to dismiss the claims for sexual harassment and wrongful termination against him, **GRANTS** the motion and **DISMISSES** Finch's claim for assault without prejudice and with leave to amend, and **DENIES** the motion with respect to Finch's claims for battery and intentional infliction of emotional distress. Finch must file an amended counter complaint, if any, on or before **August 19, 2019**.[5]

**IT IS SO ORDERED**.

Dated: August 9, 2019

Hon. Michael M. Anello
United States District Judge

---

[5] Thus, the Court **DENIES AS MOOT** Finch's request to amend her counter complaint. Doc. No. 19.